UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> NAUMAN KHALID, d/b/a Freetvall.com, § <br> Freetvall.net, Freetvall.xyz, Freetvall.me, § <br> Freetvall.live, Livetvcafe.com, § <br> Livetvcafe.net, Livetvcafe.me, § <br> Time4tv.com, Time4tv.net, Time4tv.me, § <br> Cricket-tv.net, Cricket-tv.me, § <br> Tv4embed.com, and A1livetv.com, § <br> § <br> Defendant. § <br> § | Civil Action No. 4:19-cv-04563 |

# FIRST AMENDED COMPLAINT

Plaintiff DISH Network L.L.C. ("DISH") brings this suit against Defendant Nauman Khalid, d/b/a Freetvall.com, Freetvall.net, Freetvall.xyz, Freetvall.me, Freetvall.live, Livetvcafe.com, Livetvcafe.net, Livetvcafe.me, Time4tv.com, Time4tv.net, Time4tv.me, Cricket-tv.net, Cricket-tv.me, Tv4embed.com, and A1livetv.com (collectively the "Free TV Websites"), and states as follows:

## Nature of the Action

1. DISH brings this suit for contributory copyright infringement because Defendant knew that his Free TV Websites were providing access to television channels exclusively licensed to DISH in the United States, and Defendant materially contributed to and induced direct copyright infringement by third parties.

2. Defendant demonstrated the willfulness of his infringement by continuing to provide access to television channels exclusively licensed to DISH on the Free TV Websites in the United States despite receiving numerous demands from DISH that Defendant cease.

**Parties**

3. Plaintiff DISH Network L.L.C. is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

4. Defendant Nauman Khalid is an individual residing in Faisalabad, Pakistan that owned and operated the Freetvall.com, Freetvall.net, Freetvall.xyz, Freetvall.me, Freetvall.live, Livetvcafe.com, Livetvcafe.net, Livetvcafe.me, Time4tv.com, Time4tv.net, Time4tv.me, Cricket-tv.net, Cricket-tv.me, Tv4embed.com, and A1livetv.com domains and websites.

5. The Free TV Websites had similarities among their domain registration information and used the same domain registrar, service providers, and servers. The Freetvall.com, Freetvall.net, Freetvall.xyz, and Livetvcafe.me websites each listed the same "contact" email address. The Free TV Websites also had similarities in their design, appearance, functionality, and advertisements.

**Jurisdiction and Venue**

6. DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

7. Personal jurisdiction is proper against Defendant because he used the Free TV Websites to provide access to television channels exclusively licensed to DISH to users of the Free TV Websites located in the State of Texas.

8. In the alternative, personal jurisdiction is proper against Defendant under Rule 4(k)(2) of the Federal Rules of Civil Procedure. Defendant provided access to television channels exclusively licensed to DISH in the United States including the State of Texas. This Court's exercise of jurisdiction over Defendant is consistent with the Constitution and laws of the United

States, DISH's claims arise under federal law, and Defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state. The United States was a high source of traffic for the Free TV Websites as shown by the following reports from Similarweb.com:



9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this district and under § 1391(c)(3) because Defendant is a nonresident that may be sued in any judicial district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

## DISH's Copyrights

10. DISH is the fourth largest pay-television provider in the United States providing copyrighted programming to millions of subscribers nationwide with satellite delivery under the

"DISH" brand and through over-the-top ("OTT") services under the "Sling" brand whereby programming is delivered using a public Internet infrastructure. Through its satellite and Sling services, DISH is one of the largest providers of international television channels in the United States offering more than 400 channels in 27 different languages.

11. DISH contracts for and licenses rights for the international channels distributed on its platform from channel owners and their agents, including Al Jazeera Media Network; ARY Digital USA LLC; B4U U.S., Inc.; Bennet, Coleman and Company Limited; Century Media Network Inc.; Television Media Network (Pvt) Ltd; GEO USA LLC; Globosat Entertainment, LLC; Hum Network Limited; MBC FZ LLC; MSM Asia Limited; National Communications Services (SMC-PVT.) Limited; Soundview Broadcasting LLC; and TV Today Network Ltd.; (collectively, the "Networks").

12. The Networks' channels include Aaj Tak; Al Jazeera Arabic News; ARY Digital; ARY News; ATN News; B4U Movies; B4U Music; Dunya TV; Express Entertainment; Express News; Geo News; Geo TV; Hum Sitaray; Hum Masala; Hum TV; Hum World; India Today; MBC1; MBC Drama; MBC Kids (a/k/a MBC3); MBC Masr; NTV Bangla; Sahara Samay; SAB; SET Max; Sony Mix; Sony SET; Times Now; and Zoom (collectively, the "Protected Channels"). The Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

13. DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Protected Channels and works that air on the Protected Channels in the United States by means including satellite, OTT, Internet protocol television ("IPTV"), and Internet. DISH's exclusive rights were in effect at all relevant times and are currently in effect. Many of the works that aired on the Protected Channels and for

which DISH holds exclusive distribution and public performance rights are registered with the United States Copyright Office. (*See* Exhibit 1.) A vast number of additional, unregistered copyrighted works in which DISH holds exclusive distribution and public performance rights also aired on the Protected Channels. (*See* Exhibit 2.)

14. Defendant was not authorized by DISH to transmit, distribute, or publicly perform the Protected Channels or works that air on the Protected Channels in the United States, and DISH has received no compensation from Defendant to do so.

## Defendant's Wrongful Conduct

15. Defendant owned and operated the Free TV Websites. The Free TV Websites allowed users in the United States ("Free TV Users") to watch unauthorized streams of the Protected Channels, including the works identified in Exhibits 1-2.





16. Defendant controlled the organization and presentation of the Protected Channels. Defendant organized the Protected Channels by name and into categories including Most Viewed, Pakistan, Hindi, Bangladesh, and Arab. The Free TV Websites also had a video search function that allowed Free TV Users to quickly obtain links to the Protected Channels. Defendant provided Free TV Users with easy access to streams of the Protected Channels on the Free TV Websites.

17. Upon information and belief, Defendant searched the Internet for unauthorized sources of the Protected Channels and identified links to that content. Defendant then uploaded

5

these links for the Protected Channels onto the Free TV Websites. The following is a screenshot from Freetvall.com showing links to Protected Channels.



Additional examples of screenshots showing links to Protected Channels on Free TV Websites are attached as Exhibit 3.

18. When Free TV Users clicked on links to the Protected Channels, they instantaneously received unauthorized streams of the Protected Channels. The following is a screenshot from Freetvall.com providing access to the Hum TV channel after clicking on the "Hum TV" link shown in paragraph 17:

6



Attached as Exhibit 4 are screenshots of Protected Channels accessed using the links on the Free TV Websites shown in Exhibit 3.

19.     At the time this action was filed, Freetvall.com, Freetvall.me, Freetvall.live, Livetvcafe.com, and Livetvcafe.net redirected to Freetvall.xyz or Livetvcafe.me, which provided Free TV Users with access to the Protected Channels.  Freetvall.com, Livetvcafe.com, Livetvcafe.net, Time4tv.com, Time4tv.net, Time4tv.me, Tv4embed.com and A1Livetv.com previously provided Free TV Users with access to the Protected Channels.

20. Defendant provided free access to the Protected Channels to attract more users to the Free TV Websites. Defendant monetized the Free TV Websites through advertising on the Free TV Websites.

21. Defendant had actual knowledge that the transmission of the Protected Channels and works that air on the Protected Channels in the United States infringed DISH's copyrights. Since September 2013, DISH and Networks sent at least 49 notices of infringement to Defendant using email addresses associated with the Free TV Websites and demanding that Defendant cease providing access to the Protected Channels identified in the notices. Defendant failed to respond to these notices of infringement.

22. DISH and Networks sent at least 49 additional notices to service providers of the Free TV Websites and the streams of the Protected Channels requesting the removal of the Protected Channels. Upon information and belief, at least some of these notices were forwarded to Defendant. Even when these service providers removed the unauthorized content, Defendant intentionally interfered with the takedown efforts by, for example, using different service providers or links to provide access to the Protected Channels.

## CLAIMS FOR RELIEF

### Count I

**Inducing and Materially Contributing to Copyright Infringement Under 17 U.S.C. § 501**

23. DISH repeats and realleges the allegations in paragraphs 1-22.

24. DISH is a copyright owner under 17 U.S.C. § 106 because DISH holds the exclusive rights to distribute and publicly perform in the United States, by means including satellite, OTT, IPTV, and Internet, the programs that make up the Protected Channels.

25. The programs that make up the Protected Channels are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter. DISH's copyrights in programs that aired on the Protected Channels arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including the United Arab Emirates, Qatar, Pakistan, India, and Bangladesh where the programs were authored and first published. Under 17 U.S.C. §§ 101, 411, the programs that make up the Protected Channels are non-United States works and, therefore, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.

26. DISH's exclusive rights to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels, including the works identified in Exhibits 1-2, were directly infringed by the unauthorized transmission of these programs to Free TV Users who accessed the programs using Defendant's Free TV Websites.

27. Defendant materially contributed to this infringement of DISH's exclusive distribution and public performance rights by, among other things, providing Free TV Users access to the Protected Channels and the programs that make up the Protected Channels, despite having the ability to prevent such access. Defendant also induced the infringement of DISH's exclusive distribution and public performance rights by, among other things, creating the audience for that infringement in the United States.

28. Defendant selected the channels that were made accessible to Free TV Users through the Free TV Websites. Defendant also acquired, uploaded, maintained, and controlled the links on the Free TV Websites that were used to connect Free TV Users to the Protected Channels.

29. Defendant intended that the Free TV Websites be used to access the Protected Channels and the programs that make up the Protected Channels, and he promoted, encouraged,

and facilitated using the Free TV Websites in this manner. Defendant uploaded links for the Protected Channels onto the Free TV Websites, tracked the "View(s)" for each link, grouped the "Most Viewed" links together, and included a video search function making it easy for Free TV Users to locate and access the Protected Channels.

30. Defendant had actual knowledge that the transmission of the Protected Channels and the programs that make up the Protected Channels to Free TV Users infringed DISH's exclusive distribution and public performance rights.

31. Defendant could have taken simple measures to prevent further infringement of DISH's exclusive rights to distribute and publicly perform the programs that make up the Protected Channels, such as removing or disabling links to the Protected Channels from the Free TV Websites, or blocking Free TV Users in the United States from accessing the Free TV Websites.

32. Defendant's actions were willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

33. Defendant's acts have caused substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law, warranting injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, DISH prays for judgment against Defendant as follows:

A. For a grant of permanent injunctive relief under 17 U.S.C. § 502 restraining and enjoining Defendant, and any of his agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order, including service providers, from:

      1.    transmitting, streaming, distributing, publicly performing, linking to, hosting, promoting, advertising, or displaying in the United States, through the Free TV Websites, or any other domain, website, device, application, service, or process, any of the Protected Channels or any of the programming that comprises any of the Protected Channels; and

      2.    inducing or contributing to any other person's or entity's conduct that falls within 1 above.

B.    For 112 or more registered works, statutory damages as awarded by the Court up to $150,000 per registered work infringed under 17 U.S.C. § 504(c), or Defendant's profits attributable to the infringement of those registered works under 17 U.S.C. § 504(b).

C.    For unregistered works, an award of Defendant's profits attributable to the infringement of each unregistered work under 17 U.S.C. § 504(b).

D.    For DISH's attorneys' fees and costs under 17 U.S.C. § 505.

E.    For impoundment and disposition of all infringing articles under 17 U.S.C. § 503.

F.    For an order permanently transferring each domain name that Defendant used in connection with the infringement to DISH.

G.    For pre- and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law.

H.    For such additional relief as the Court deems just and equitable.

Dated: February 24, 2020                  Respectfully submitted,

                                                  **HAGAN NOLL & BOYLE LLC**

                                                  By: /s/ Stephen M. Ferguson
                                                  Stephen M. Ferguson (attorney-in-charge)
                                                  Texas Bar No. 24035248
                                                  Southern District of Texas Bar No. 614706
                                                  Two Memorial City Plaza
                                                  820 Gessner, Suite 940

Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Joseph H. Boyle (of counsel)
Texas Bar No. 24031757
Southern District of Texas Bar No. 30740

**Counsel for Plaintiff DISH Network L.L.C.**